Good morning, Mr. Brennan. Good morning. May it please the Court. Your Honors, my name is Hank Brennan. On behalf of the appellant with me today is Attorney James Bedreau to my left and Attorney Dania Fullerton. If Your Honors would allow, I'd ask if the Court would A criminally accused is entitled to a fair trial from the beginning of a trial to the end of a trial. They have a right to a fair assessment of the truth and the facts. They have a right to testify on their own behalf. And they have a right to a fairness in the trial. The government did not honor their commitments and their obligations to fairly turn over evidence, to provide truthful evidence, and to allow a defendant to testify on his own behalf. There are three primary points in this case and they're all interrelated. The first point is the Brady issue. It is the conduct of the government in withholding information that is helpful for an accused and that goes to the heart of this case, the government had information of promises, rewards, and inducements that they had given to one of their key witnesses, John Moderano, that they did not disclose to the defense and importantly they denied upon request that they had made those promises. It is critical for an accused to be able to confront the witnesses, not only to test that witness's credibility, but to show the incentive of the government to reward the witness because inevitably a jury has to trust the proponent of evidence. The jury has to trust the government. And by withholding evidence and promises they gave to Mr. Moderano, there was an inability to cross-examine Mr. Moderano and importantly the government on their incentive for these witnesses not to tell the truth. Specifically in this case, Mr. Moderano was not only given great rewards that were disclosed, he was also given a greater reward and that is he was allowed to protect his friends and his family from prosecution and not simple prosecutions from murder. Requests were made in discovery whether or not that promise was made and the government denied that it was. Yet, as noted in the transcript and noted in the brief, when cross-examining a key member of the prosecution team, Trooper Tom Foley, I asked him whether or not these rewards regarding protection for his family and friends were given and he conceded on the transcript that that was part of the deal. What words, what exactly did he say that you say represents the concession? I had asked Mr. Foley if there was a deal that allowed protection of family and friends. On day two, page 169, I asked Mr. Foley about this and he said at the time we were working on the case realistically John Moderano was not going to testify against these individuals referring to his family and friends. So that doesn't sound to me like an agreement at all. It sounds like simply an observation that Moderano wasn't going to do it and then we have a written agreement with an integration clause that doesn't include that. So do you have any other evidence that there was such an agreement? Yes. Further on in that same statement, it becomes more clear. Okay, well is he given a pass on that? Answer, I suppose it was part of the agreement that his attorney made with the United States Attorney's Office. Question, and this was something you folks agreed to and you could read your answer please and he had to read his Florida testimony. Unfortunately, we were put in a situation that we had to agree to that. I suggest to your honor it could not be more clear that a member of the prosecution team admitted that there was this extraordinary reward to protect family and friends that the prosecution team in this case denied giving. And it's critical as I say not just for the cross-examination of John Moderano, but the theory of the defense is that the government was being underhanded, that the government was not disclosing the reality of their deal making and the reason why they made these deals in part was for the protection of their own misdeeds. Being unable to. So counselor, the government denies that there was an agreement and assuming that there is this reference by Mr. Moderano that there was, he was nonetheless asked about it on cross-examination. I'm trying to figure out how you were prejudiced. Because if a witness knows there will be no sanction for lying on the stand, then cross-examination becomes ineffective. You can ask a witness anything on cross-examination and they either have to be a disciple of the truth or they have to feel as though it's going to be sanctioned. So if the government has protected this deal and it's a secret deal with a witness and they know that they can perjure themselves on the stand yet not be prosecuted for that perjury, there is no power to cross-examine. What should have been disclosed to you? It should have been disclosed that John Moderano had part of his agreement that he would not have to testify against his friend. But I guess, what should have been disclosed to you that wasn't? So your evidence that there was this agreement was the testimony in open on it to Judge Kayada. Yes. What else should have been given to you that wasn't? The government says there is no agreement. As I understand it, to this day, that's the government's position. So what is it that you were not given that you want? We weren't given the fact that that agreement exists. So I was resigned to cross-examining the trooper. And it's not substantive evidence when you cross-examine somebody. It has much less value and weight than an actual substantive piece of evidence. So there was never any substantive submission that this deal exists. Well, come back to it. Foley says, I suppose it was part of the agreement. Let's suppose that Foley was wrong. And when you go and look at the agreement, it's not there. And there was no agreement. Under that hypothetical, what could the government, what more could the government have given you? If we reach the conclusion that Foley is wrong, we would have to reach the conclusion that Moderano, in part, is wrong. Because Moderano, as well in prior testimony, does, in fact, concede that there was this deal to protect his brother. Now, he did not admit it and would not admit it to this trial without sanction. I think you're avoiding the question. My question is, if there was no agreement, what more could they have given you? Nothing. If there was no agreement, then there would be nothing to give. Okay. And then the government says there's no agreement. They've given you the written agreement. Why should we find, as a matter of law, that there was an agreement, therefore there must be something else? Because not only did a key member of the prosecution team concede that there was an agreement, but prior testimony that was brought out in this trial of John Moderano himself proves that point. For example, day six, page 133 to 134, I cross-examined Mr. Moderano about the deal. You want a finding by us that there was an agreement? Yes. Did you seek a finding like that below? I did not. Well, then how can we be the first person to seek the finding? I mean, you're asking us for a fact you didn't ask the district court to make a finding on. Whether the court found there was an agreement or not was irrelevant to the government admitting there was an agreement and the witnesses acknowledging the agreement. I don't see how the district court can force a witness to tell the truth or force the government to give information that they're not willing to give. And how can we do that? How can we make a finding that wasn't submitted to the district court? I mean, I don't... Are you saying that we should make a finding that, as a matter of law, this... What is our standard of review for this? When you look at a Brady violation, you can look at the transcript and come to the conclusion that this promise, in fact, existed. You can look at the testimony admissions, not only of the government witness, Mr. Moderano, but of Mr. Foley, and you can conclude that the defense... Even if you're right, isn't this Colston, Newcastle? I mean, the guy's committed these horrendous crimes, and the government's made this plea agreement with him that offers him huge consideration. In fact, as I understand some of your defense, you called it almost extreme, undue, almost obscene consideration that was given to Moderano. So what difference does it make in your case, or in terms of us doing an analysis of prejudice, if it was also this other benefit, too? Those are all good characterizations of the deal, Your Honor. There's a difference between the benefit given to John Moderano, as far as an obscene deal, and what the government has withheld, because the approach from the defense and the theory of the defense was not simply that Mr. Moderano was somebody who was incredible. It was that the government was willing to make further deals off the record, not to protect Mr. Moderano, but to protect themselves. That was the theory of the case, and the jury... But that's got nothing to do with... The whole Brady issue here is that if the government's made a deal with a witness, and the jury doesn't know about it, they might believe the witness, whereas they wouldn't have believed the witness if they'd known that the witness had this incentive to tell the truth. Well, they already know Moderano's made a big deal, and you've characterized it as even bigger than a big deal. So if we're looking at what the effect on the jury would be, it seems rather improbable that the jury was sitting there saying, given everything we know, we believe Moderano, at least on some things, but oh, whoa, he got this other deal, too, that he wouldn't have to tell his family? Well, now we're not going to believe him. That seems to be quite a stretch. I respectfully disagree, because the compulsion or the impulse to protect one's family and reputation is oftentimes more important than protecting oneself. If there is a agreement that the government made that they wouldn't disclose, it would put that witness in a position to say anything the government would want him to say that would benefit the government, which is beyond... But the deal you describe is only protecting himself. It's not protecting his family, because he could just refuse to testify without any agreement with the government, and there'd be no ramifications for his family. The only ramifications would be for him for contempt. However, that wasn't the representation made. It has to be a fair representation of facts so the jury understands the exactness of the agreement. The second issue that is important is the issue of the conduct during trial, which is raised in the brief, and that is the continued speaking objections of the government which posits or provides information to a jury which is personal opinion and is inadmissible evidence. In addition, as we raised in our rebuttal brief, because the government had suggested somehow that the arguments of the way they proffered evidence was not unfair, is the suggestion or the representation in the brief of how they asked witnesses information that was inconsistent, inconsistent with their prior testimony. It's not simply an obligation. The government has to have a witness when they ask questions testify consistently or explain the inconsistency. They cannot lead and ask questions of witnesses to create an idea or a concept that is untrue or contrary to prior information or testimony. The most important issue this segues into is the appellant's right to testify. The government sought to preclude the appellant from testifying at trial. The court made a ruling that we objected to that precluded the defendant from testifying at trial. Any defendant, no matter who the defendant is. Can I just understand your argument on that? There's two pieces of it, if I'm understanding your briefing right, one of which is not entirely clear to me. The first is whether he could testify to the defense, for the defense that he had an immunity agreement that would be legally effective. Yes. You seem to be making a second argument with respect to his ability to testify to the immunity issue that you, I think, are characterizing as distinct from the question of whether he had a right to testify that he had a legally valid immunity agreement that nonetheless relates to the immunity agreement. Could you explain what that argument is? I could if I could use some of my rebuttal time. When the immunity defense was precluded by the court in our position wrongfully, the appellant still had a right to testify to his relationships in those immunity agreements, relationships with law enforcement members, relationships with members of the Department of Justice. The government's case really rested on their description and characterization of relationships between the parties. In fact, Stephen Flumney, as we note, testified in the case that he did not have immunity. We simply asked for the appellant to be able to be asked the exact same questions that the government asked, that somebody who's accused can get up and testify what his relationships were that were relevant to this continual case. Can you identify somewhere, you can even do it in a follow-up letter, where you presented that argument to the district court and had a ruling on that in which your ability to testify to that separate issue about the immunity was actually rejected? Because I didn't see a reference to it in the briefing in the one excerpt that's attached. It seems to trail off where the district court says, I'll get back to you on it. It was on page 165. I believe it was 27th day of trial. But I'll get an exact quote for your honor. Co-counsel Mr. Carney raised the issue that Mr. Flumney was allowed to talk about immunity and the fact that he didn't have immunity. And as I understand, the district court then came back and said, I don't quite see it that way, at which point the record to me suggests that you say thank you. The trial counsel said thank you. And it ends. But I didn't see an objection being put forward at that point in any kind of crisp way that identifies what the reason why there had to be this extra testimony was. There was a two-part here. There was a discussion in the morning and the afternoon. And it was clear throughout not only the trial and the history and context of this case when the judge made the ruling that we were not going to be allowed at that point to have him testify to those issues. So I agree. There wasn't a crisp objection. But I suggest that point was well-preserved. Thank you, your honor. Your honor, may it please the court, Randall Crum on behalf of the government. Starting first with the last argument that was discussed about the facts surrounding the request to present immunity to the jury. My answer here, Judge Barron, to your question is that I don't think that that was preserved. I think that if you read the substance of the discussion and the ruling, which is page 47 of the addendum, the court treats it as being a narrow question of whether he can present the defense of immunity to the jury as a legal matter. That's all it says. The district court actually specifically invites the defendant to present the claim of public immunity, which would be something that would go to the jury if he wants to, gives him a deadline, which he does not take advantage of, and doesn't any more broadly state what this would cover. I'm not aware of anywhere in the record in which the defendant seeks to present a more limited form of immunity, effecting only some claims, as he suggests on appeal, that perhaps he could have relied on immunity for some claims. I don't see any point at which he renews it and says, well, with respect only to retrospective immunity, or with respect only to the certain class of claims, I would seek immunity. That never happens, nor is there, and more importantly, any attempt to argue that issues surrounding it or conversations surrounding it might be proper for another purpose, to provide context, information regarding mens rea. That was not a rule in the court ever made. The court never said that couldn't happen, and I think that at this point, that is prohibited, because for one thing, under Rule 103, is required to seek ruling on that, but also make a proffer as to what that would be to preserve it. And arguably, under Luce v. United States, it's waived entirely because he didn't take the stand and try, because I understand the rule to be that you have to, in those kinds of circumstances where you have an adverse motion in limine, take the stand and see how far you can get, and see at what point you're told no further, you can't say any more about that issue. So we don't have any record. So I would argue it's not only forfeited, but waived on the question of any narrower form of immunity, and the only issue really before the court is sort of the all or nothing issue of whether the court could rule, outside of the context of the trial itself, that he had not put forth enough information to put immunity to the court. On the second question that was discussed, the Brady issue, I think the same problem is that the record really doesn't support the argument they're trying to make. I mean, the allegation is that there was, in essence, a knowing withholding of information or a knowing introduction of false testimony, as they also characterize it. But there's simply nothing in the record that establishes that the agreement they claim existed, in fact, did exist. And what, as we point out in our brief, I think it's pretty clear that the And another point worth clarifying is that on the redirect, it becomes a little clearer, but with respect to Trooper Foley, he acknowledged that what he understood, his information largely came from the proffer period. And that was not necessarily, he did not necessarily say that whatever suppositions he understood carried through to the final agreement. And on the redirect of Margarano, the government brought that out, that, in fact, Margarano claimed that he had, to some extent, he said he didn't name names with respect to his brother in the proffer period, but that he was obliged by the final agreement to implicate his brother in anyone else. And, in fact, he testified in the grand jury with respect to his brother. So any inconsistency in language or slight inconsistency in the testimony is explainable and does not evidence the existence of an agreement, much less give this court a basis for finding it in the absence of a finding in the district court. Now there wasn't much discussion of the other issues. Does the court have any questions with respect to the other issues or these? Going back to the first issue, assuming it wasn't waived, what's the government's position with respect to whether he had, assuming we thought that their reading of the record showed that the district court did deny an opportunity to explore the relationship surrounding the immunity agreement, even though they weren't using that evidence in order to make a claim that they had a legal right to immunity, but that he had a legal right to immunity? What's the government's position with respect to that argument? Well, I think our position is very difficult to judge in a vacuum because we don't know what he thought he would say, whether he wanted to talk about the nature of his relationship with O'Sullivan. That could have been relevant evidence potentially to an argument if he was arguing that there was a public authority defense or it affected his intent when he committed certain acts. But it's difficult to say because he hasn't said what he thought. Narrowly perhaps the court would have said only, you can't talk about it as immunity per se. You can't say that I was immune, but you can say we had certain conversations and these are the kinds of things we talked about. But again, I don't know here whether that would have been satisfying. I mean, that's the difficulties when there's this argument that he was precluded from testifying. He chose not to testify. And if you read the colloquy with the defendant, he said that he didn't try to say, I want to talk about this or that, or he didn't suggest that there were things that he thought he could have gotten into. But for the ruling, he just said, well, I feel like I've been barred and I'm not going to testify. So we're left with really no sense of what he might have said. Thank you. Thank you. Do you still want your two minutes? I appreciate the gesture. I think I've gone over time, Your Honors. You can have two. Thank you, Your Honor. Your Honor, when the appellant was asked why he wasn't testifying, he was, on the record, very clear. It wasn't amorphous or vague. He said that he fails as though he could not present his defense and was choked off from the defense because he couldn't testify about his relationship with a member of the Department of Justice. That record could not be more clear. A citizen's entitled, when they're accused of a crime, to get up and testify about relevant facts of their relationship with the law enforcement department that is accusing them. There was no chance, effective chance, for the appellant to testify in a way that would rebut the government's evidence if he couldn't testify about the very relationships they spent days and weeks talking about. It doesn't matter whether it's overly believable or likable. An accused has that fundamental right to testify. Even if the witnesses weren't allowed by the court and there was no instruction from the court, a defendant has that right to testify. There was no shaking that right. In fact, when we look at Rock, it says, in a similar case, that that error is automatic reversal. And that is because a defendant's last message, his last voice... Just so I get it, that colloquy you're talking about between the judge and the defendant occurs in the wake of her ruling, which is limited only to the legal question of immunity. There's nothing in that colloquy where she says, if you'd like to testify about anything about the relationship beyond the legal defense of immunity, you can't. He says, I feel like I can testify. She says, I understand. Okay. His impression of the limitation is clear from that colloquy because of the rulings, not only pre-trial, but throughout the entire trial. Efforts continually were made to talk about relationships beyond the Boston FBI. And when those efforts were made, they were stopped. So it was abundantly clear through the context of the case that he was not going to have that chance to testify. And when a defendant sees that he's being prevented from giving Brady material and then sees the conduct during trial that occurs, that he can't prevent from happening when the prosecutor's made comments, the last position he has to defend himself beyond having a lawyer is to testify. He did not get that chance. I'm sorry, Counselor, when you say efforts, what are you referring to? Are you referring to efforts made through cross-examination of government witnesses or proffers made by the attorney? What are you referring to? There was an enormous amount of speaking objections in this case that infected the jury, that gave the government's position inadmissible opinions, inadmissible conclusions to the jury that they weren't entitled to, that reflected upon not only – I'm talking about – you mentioned Mr. Bolger's efforts throughout the proceeding. What are you referring to? A person who's accused is present and watches the decisions and the efforts of the government throughout the trial, watches the examination of witnesses, sees that whenever his attorneys are trying to ask questions beyond the Boston FBI and relationships with the Department of Justice that prevent him from doing that, it becomes unequivocally clear to an accused they're not going to be able to testify about that issue. When the court has said they cannot testify about immunity, which is intimately revolved with the relationships that he had or suggested he had with the Department of Justice, it doesn't need to be more clear to an accused they're not going to be able to testify fully and fairly about that accurate history. Thank you. Thank you, Your Honor.